FINNEY, Respondent, *vs.* BRANT, Appellant.

1. All cases originating in the St. Louis Court of Common Pleas, where there has been twenty days' personal service, are triable at the first term, notwithstanding the new code of practice.
2. Where several parties interested in resisting a suit, appointed a committee of their number to employ counsel and conduct the defence, and agreed in writing to pay to the committee such *pro rata* assessments as might be made against them to defray the expenses of the defence, and one of the parties to the agreement failed to pay the amount assessed against him, which was thereupon made up by the committee, *it was held,* that each member of the committee might sue separately for the amount paid by him.
3. In such a case, the statute of limitation only begins to run, at the date of the payment of the last assessment.
4. A suit brought by a member of the committee to recover back the amount paid by him, will not be defeated by the mere fact that it was actually paid by a firm to which he belonged, (he alone being a party to the agreement,) unless it appears that the money belonged to the firm, and was not paid on his account.

*Appeal from St. Louis Court of Common Pleas.*

John O'Fallon, J. B. Brant, J. G. Lindell, John Finney, Isaac Walker and many others united in the defence of suits brought to recover a tract of land known as the Clamorgan arpent, in which they were severally interested, and entered into the written agreement which is set out in the opinion of

the court, by which the five persons named above were appoint-
ed agents to manage and conduct the defence, with power to
appoint any of the other parties to the agreement to fill vacan-
cies that might occur in their number from death, resignation
or otherwise.    The parties to this instrument agreed to pay
" to the agents or their successors" such amounts as might be
assessed from time to time to defray the expenses of the de-
fence, in proportion to the value of their several interests,
which was to be ascertained from the county assessment for
the time being.    O'Fallon and Brant refused to act on the
committee to conduct the defence, and Solomon H. Robbins
and Peter Lindell were substituted in their stead.    The com-
mittee, in 1846, employed several counsel to defend the two
suits which had been brought, one in the St. Louis Court of
Common Pleas, and the other in the United States Circuit
Court for the Missouri district, and agreed to pay them a fee
of $2000 each, one half of which was payable in six months,
and the remainder upon the final determination of either of said
suits, either in the United States Circuit Court or in the Su-
preme Court of Missouri.    An assessment was made against
each of the signers of the agreement for his proportionate
share of the counsel fees, and a draft was drawn by the com-
mittee in favor of each of the counsel upon each of the parties
to the agreement, payable in instalments, as the fees became
due.    This assessment was made upon the basis of the valua-
tion in the county assessment of 1845.    Brant refused to ac-
cept the draft drawn upon him for his share of the counsel
fees, and they were paid by the committee, each member pay-
ing separate sums, at different times.    This suit was brought
by John Finney in 1853, to recover back the amount thus paid
by him for Brant.    Some of the payments were made by Fin-
ney in 1846, and others in 1852, as they became due by by the
terms of the draft and of the agreement by which the counsel
were employed.

It appeared in evidence that two of the sums included in the
amount sued for were actually paid by J. & W. Finney, a firm

composed of the plaintiff and William Finney ; but it did not appear that they were not paid with the money or on account of John Finney, who was the only member of the firm liable under the agreement.

The cause was called for trial in the Court of Common Pleas at the first term. The defendant applied for a continuance, on the ground that it was not triable at that term, but there having been personal service on the defendant twenty days before the commencement of the term, his application was overruled. There was a judgment for the plaintiff and the defendant appealed.

*Dayton* and *Shepley*, for appellant. 1. The court below erred in refusing to continue the cause, and forcing the defendant to trial at the return term. New Code, art. 17, sec. 2. 2. Under the pleadings and proof, the plaintiff was not entitled to recover. A joint action should have been brought by the agents to whom Brant agreed to pay the assessments made upon him. His contract was with the agents as a body, and his responsibility was to them collectively. 3. The plaintiff was barred by the statute of limitations from recovering the money paid in 1846. R. C. 1835, p. 716, tit. "Limitations," art. 2, sec. 2. Ang. on Lim. (2d ed.) p. 135, 136, and notes. 4 McCord (S. C.) 210. 6 T. R. 189–94. 1 Barn. & Adolph. 15.

*Barton Bates*, for respondent. 1. It is of no importance that a portion of the money was paid by J. & W. Finney. John Finney was the agent and committee-man, and as such, under obligation to pay. *His obligation* was met, and it is entirely immaterial whether it was paid by his own hand, or by the hand of another. 2. The statute of limitations does not apply. The whole proceeding is under a special written contract, whereby an agency was created to carry on a complicated and continuing business. It is precisely like a running account, the last item of which being in time saves all. 3. This suit is properly brought in the name of Finney alone. It is not brought upon Brant's covenant to pay the calls,

but upon the implied assumpsit for money pay for his use. This court has decided that a joint suit could not be brought, and the defendant, having had the benefit of that decision, now insists that separate suits cannot be brought.

RYLAND, Judge, delivered the opinion of the court.

1. The appellant contends, that the court below erred in refusing to continue the case, and in ordering the same to be tried at the first term. This was a suit in the Court of Common Pleas. When the Court of Common Pleas was first established, the 9th section of the act declared "that all cases originating in said Court of Common Pleas, when the process shall have been personally served on the defendant fifteen days before the commencoment of the term, &c., shall be heard at the first term, unless good cause for a continuance be shown." Acts of 1840–41, p. 51. "The practice, process and proceedings of the court shall be the same, in all respects, as is or may be provided by law for the Circuit Court, except as herein otherwise specially provided." Sec. 8 same act. In the Revised Code of 1845, the time, instead of being fifteen days service before next term, is increased to twenty days service, and this is the only difference between the 9th section of the act of 1840 and '41, creating the court, and the 9th section of the revised act of 1844–45, chap. 42, tit. Common Pleas Court of St. Louis county. The 8th section of the act of 1844–45 is the same as the act of 1840–41. Now the special provision mentioned in these two sections, in regard to the practice, process and proceedings, takes the service of process from without the operation of the general law, when the suit is brought in the Common Pleas Court, and we must look to the time of service mentioned in the act concerning the Common Pleas. If, then, the service has been twenty days before the term, the first term is the trial term. We consider the practice act of 1849 does not repeal the provisions of the acts concerning service, in the cases originating in the Common

Pleas, and that the refusal of the court to continue this case is no error.

2. The second point relied upon by the plaintiff to reverse the judgment below is, that the plaintiff could not sue separately for money which he paid for defendant. It appears that some twenty-five persons, dreading the claim or claims of others, under one Jacques Clamorgan, to part of the tract of land of one by forty arpens granted to Gabriel Dodier, determined to make common defence against all suits, motions and proceedings in law or equity against them or any one of them, for any portion of said tract of one by forty arpens; that among this number was the defendant, Brant; that by agreement, these persons appointed agents to manage the matters of defence, to employ counsel to conduct all matters and things whatever, pertaining to a proper defence against all such suits, now depending or instituted, as well as all such as may be instituted or commenced against any of the persons signing said agreement, at any time within ten years from the date of said agreement. The agreement is as follows :

"These presents witness, that the undersigned do hereby constitute and appoint John O'Fallon, Joshua B. Brant, Jesse G. Lindell, John Finney, and Isaac Walker, their lawful agents and attorneys in fact, to direct, manage and conduct all matters and things whatsoever, pertaining to a proper and lawful defence against all suits, actions, motions or other proceedings in law or equity, now pending or instituted, as well as all which may be instituted, made or commenced against any one of the undersigned, at any time within ten years from the date hereof, by any person or persons whomsoever, claiming under Jacques Clamorgan, deceased, for the whole or any portion of the tract of one by forty arpens of ground granted to Gabriel Dodier, and being the second arpent north of and parallel to the king's road, or St. Charles street, with full power to contract with and employ such counsel as they may deem fit, and do and perform all other things in the premises, which, at their discretion, they may think needful and necessary to be per-

formed; and that they have full power to substitute, from time to time, some one or more of the undersigned to fill any vacancy which may happen in the number of said agents or attorneys, from death or otherwise; that the undersigned do hereby severally covenant, to and with said agents or attorneys, and their successors, that each will pay to said agents, from time to time, such calls, amounts or sums of money as they may make or assess against us respectively, to defray the expense of conducting said defence or other proceeding, to secure the undersigned against said Clamorgan claim; every such levy or assessment shall be upon each in proportion to the interest he holds in said tract of land. The county assessment, for the time being, shall be the rule of value upon which the assessment shall be made.

"These presents further witness, that, whereas, John O'Fallon and Jesse G. Lindell, in 1826, purchased said tract of land at sheriff's sale, made in virtue of a judgment and execution against Jacques Clamorgan's executors, which purchase, if sustained in law, will be good against all persons claiming under Clamorgan. Now the said O'Fallon and Lindell, parties hereto, not desiring to avail themselves of said purchase, beyond their interest to property within said tract, otherwise acquired, and that they hereby agree to and with each of the undersigned, who *bona fide* claim any part of said tract, that on the payment by them, to said O'Fallon and Lindell, of all money, with interest, by them expended in the premises, and pay all costs and fees whatever, accruing or to accrue in sustaining or attempting to sustain said purchase, they will give to each of the undersigned the benefit of said purchase, to the extent of his interest as aforesaid.

"Witness our hands, at the city of St. Louis, this 28th day of August, 1845. "PETER LINDELL,

"J. B. BRANT," &c.

The agents appointed had full power to contract with and employ counsel to conduct the defence. These persons signing said agreement were to pay to their agents and successors,

from time to time, such calls, amounts and sums of money as they, the agents, may make or assess against them respectively. Every such levy or assessment shall be upon each in proportion to the interest he holds in said tract of land; the county assessment, for the time being, shall be the rule of value upon which the assessment shall be made. The agents were John O'Fallon, Joshua B. Brant, Jesse G. Lindell, John Finney and Isaac Walker. O'Fallon and Brant refused to serve, and the others named, in pursuance of the power given to them, filled the vacancy, by appointing Solomon H. Robbins and Peter Lindell.

These agents then employed counsel to defend the suits which had been brought by one Fidelio Sharp and others in the Circuit Court of the United States for Missouri; also to defend suit instituted in the Common Pleas Court. They agreed to pay the counsel, that is Gamble & Bates, two thousand dollars — one thousand in six months, and the balance upon the determination of any one of said suits upon the merits, either in the Circuit Court of the United States for the Missouri district, or in the Supreme Court of Missouri. They employed Spalding & Tiffany upon the same terms as Gamble & Bates, Geyer & Dayton upon the same terms, and Judge Lawless upon the same terms. The suits were finally settled by a decision of the Supreme Court of the United States, in which the persons making the agreement succeeded in defeating the Clamorgan claim, and the defendant in this suit was quieted in his possession, and became, by the judgment of said court, legally entitled to a large amount of property.

In order to pay the fees of the counsel employed, the agreement had settled upon a principle of assessment. The owners of the interests adverse to Clamorgan, had agreed that the agents shall make the assessment according to the rights and interests of each in the tract, and this assessment shall be according to the value, to be ascertained by the county assessment for the time being. The agents employed Mr. Shepley to examine the county assessment and get the basis upon which

they might make the proportionate assessment, and then make the calls upon each for his contribution.

This was done and the assessment made. Calls were accordingly adjusted to the interest of each respectively in the land. These agents then drew on the defendant, Brant, for his share of the money, and he refused to pay, alleging an improper assessment. These agents then, not as partners, but as persons who had employed counsel to defend the law suits of the defendant, became personally liable to the attorneys and counsel employed, and each separately paid a portion of the money which the defendant, Brant, should have paid. Brant was one of those who had authorized these persons to employ counsel to defend his suit; the counsel defended Brant's suit successfully. Brant refused to pay the calls made upon him by these agents, and these agents had each to pay separately for him a large amount of money, at different times, to the different lawyers and counsel. They united in bringing suit to recover the money from Brant, and it was held by this court that these persons were not partners, and that they did not jointly pay out the money for Brant, but each paid separately his proportion of the amount from his own means, which Brant ought to have paid, and each had his separate cause of action against Brant.

This first decision ruling against the joint action was made upon the point specially relied on by Brant's counsel at that time. Now the objection is seriously made against the separate action of those who have each paid out his own money to defend Brant's law suit — paid out money not from a joint fund, but from their own purses, in different portions, at different times. This point is ruled against the defendant.

3. The defendant's third point is the statute of limitations. It also will prove unavailing. The money paid for him was paid partly in 1846, more than five years before the commencement of this suit, but it was on a contract with counsel requiring a part in six months and a part when the suits were finally disposed of on the merits. A part of the money was paid in

1852, and some in January, 1853. These payments are considered as a running account, and the last item brings down the whole within the statutory time.

4. The objection, that the firm of John and William Finney paid the money for Brant and not John Finney, and that the firm of John and William Finney ought to sue, and not John, is also untenable. John Finney was bound; was liable to pay the fees, which, as one of the agents, he had agreed to pay counsel for Brant and others. Now this liability of John was discharged by the payment for John, by the hands of John and William Finney, but we cannot say that it was not with John's money. There is no proof that the payment was with the partnership funds; it was obviously made for him, for he was responsible and not his firm. To say that the payment of this individual liability by the firm was not such a payment as could authorize the individual to sue, would be exceedingly refined and technical, and in this case, this court cannot be expected to search out for technical objections against a judgment apparently for the right party.

The judgment below is affirmed, Judge Scott concurring.